FILED
United States Court of Appeals
Tenth Circuit

June 20, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

FISH CREEK CAPITAL, LLC, a
Wyoming limited liability company,

        Plaintiff-Appellant,

and

FLAT CREEK CAPITAL, LLC, a
Wyoming limited liability company,

        Plaintiff,

v.

WELLS FARGO BANK, N.A., a national
bank,

        Defendant-Appellee.

No. 11-8081
(D.C. No. 2:11-CV-00176-NDF)
(D. Wyo.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, Chief Judge, **PORFILIO**, Senior Circuit Judge, and **MURPHY**,
Circuit Judge.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Plaintiff Fish Creek Capital, LLC, appeals from the dismissal of its contract claims against Wells Fargo Bank, N.A.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

The Snake River Sporting Club Development Company (Snake River Company) obtained a subdivision permit from the Teton County Board of Commissioners (Teton County) in Jackson, Wyoming.  In July 2005, Wells Fargo (successor by consolidation with Jackson State Bank and Trust) issued a letter of credit (LC) to Teton County.  The purpose of the LC, which had a termination date of July 15, 2006, was "to ensure that [Snake River Company] will install INFRASTRUCTURE IMPROVEMENTS" in the Snake River Sporting Club Development (Snake River Development) by the LC's termination date and to "insure that [Snake River Company] will be financially responsible should [it] fail to install [those improvements] in the specified time and manner."  App. at 19.  Wells Fargo extended the LC by issuing three replacement LCs.  The second terminated on July 14, 2007, the third on July 14, 2008, and the fourth on October 14, 2008 (later extended to February 12, 2009).  Each LC stated that it was governed by the Wyoming Uniform Commercial Code.  Snake River Company never completed the infrastructure improvements, and in January 2009, Teton County drew on the LC.  Wells Fargo paid off on it, and Teton County completed the infrastructure in the fall of 2010.

Meanwhile, on August 30, 2006, Fish Creek obtained a $1.425 million loan from Wells Fargo for the purchase of property in the Snake River Development. The loan had a term of one year. Fish Creek's co-plaintiff, Flat Creek Capital, LLC, granted a $500,000 mortgage to Wells Fargo against real property it owned to secure the loan to Fish Creek.[1] Sometime after Wells Fargo issued the third LC in July 2007, one of Fish Creek's principals met with Wells Fargo to notify the bank that extending the LC would adversely affect the value of property in the Snake River Development and make it difficult or impossible to sell because the infrastructure had not been timely completed. During this same time frame, Wells Fargo became a lender to the previous senior lender for the Snake River Development project, R.E. Loans, LLC, which subordinated its interests to Wells Fargo, thereby making Wells Fargo the lender to R.E. Loans and the senior lender for the Snake River Development.

Ultimately, Wells Fargo gave notice of its intent to foreclose the mortgage Flat Creek had given to secure the Fish Creek loan. Fish Creek then filed this action. In its complaint, as clarified somewhat in its response to Wells Fargo's motion to dismiss, Fish Creek claimed that Wells Fargo breached a covenant of good faith and fair dealing in their loan agreement by extending the second LC beyond the July 2007 termination date. Fish Creek alleged that it had relied on the completion of the

---

[1]    Flat Creek is repeatedly identified in this action as "Flat Creek Capital, LLC," although the entity's name appears to be Flat Creek Capital Corporation, as set out on the mortgage.

infrastructure by that date in deciding to borrow funds to purchase property in the Snake River Development, and that Wells Fargo had negotiated extensions of the LCs for its own benefit, apparently evidenced by the fact that Wells Fargo's funding exposure was reduced by more than $2.1 million between the second LC and the fourth LC. Fish Creek also claimed that it was a third-party beneficiary of the LCs and, as such, entitled to damages arising from Wells Fargo's failure to pay on the LC that terminated on July 14, 2007. Fish Creek noted that property values in Teton Valley decreased dramatically between the July 2007 termination date and the eventual completion of the infrastructure in the fall of 2010. Fish Creek estimated that the value of its property in the Snake River Development had decreased over $700,000 during that time.

Wells Fargo moved to dismiss Fish Creek's claims under Fed. R. Civ. P. 12(b)(6), arguing that it had no duty to Fish Creek under the loan transaction—and no duty at all under the LCs—to assure that Snake River Company completed the infrastructure improvements by any particular date. Wells Fargo contended that its only duty under the loan agreement was to advance the loan proceeds, which it did. Wells Fargo also argued that Fish Creek was not a third-party beneficiary of the LCs and, in any event, Well Fargo's only duty under the LCs was to pay when Teton County drew on an LC, which it did.

The district court agreed with Wells Fargo's position. The court first considered Fish Creek's claim that Wells Fargo breached the covenant of good faith

and fair dealing, observing that Wells Fargo had no obligation under the loan agreement to complete the infrastructure by the summer of 2007; Wells Fargo's only obligation was to lend money to Fish Creek, and it fulfilled that duty. The court also observed that there was no allegation that Wells Fargo promised Fish Creek that the infrastructure would be completed by any particular date. Because "[t]he covenant of good faith and fair dealing may not . . . be construed to establish new, independent rights or duties not agreed upon by the parties," *Whitlock Constr., Inc. v. S. Big Horn Cnty. Water Supply Joint Powers Bd.*, 41 P.3d 1261, 1267 (Wyo. 2002) (quotation omitted), the court concluded that the claim must be dismissed.[2]

Turning to the third-party-beneficiary breach-of-contract claim, the court rejected Fish Creek's argument that Wells Fargo knew that lot owners were intended beneficiaries of the LCs. Fish Creek relied on two Wyoming statutes in support of that argument, Wyo. Stat. §§ 18-5-304 and 18-6-306(a)(viii). Section 18-5-304 provides that "[n]o person shall sell land subject to subdivision regulation under this article, record a plat or commence construction of a subdivision without first obtaining a subdivision permit pursuant to W.S. 18-5-306 or, if applicable, W.S. 18-5-316 from the board of the county in which the land is located." In turn, § 18-6-306(a)(viii) requires a developer to "provide a performance bond, acceptable letter of credit or other sufficient financial commitment to assure that any facilities

---

[2] Because this is a diversity case, Wyoming law applies. *See Cooperman v. David*, 214 F.3d 1162, 1164 (10th Cir. 2000).

proposed or represented to be part of the subdivision will in fact be completed as proposed, or escrow sufficient monies out of land sales to guarantee that [infrastructure improvements] are installed." The court found no legal basis in these statutes supportive of Fish Creek's allegation that it was an intended third-party beneficiary of the LCs. Further, the LCs themselves provided no support for Fish Creek's position because each one identified the Teton County Board of Commissioners as the beneficiary entitled to payment in the event Snake River Company failed to install the infrastructure improvements, and there was no indication that lot purchasers had any rights under the LCs. The court also recognized that the purpose of the statutory requirements is to protect a county from financial burden in the event a developer fails to complete a subdivision project, and that it is the county, not the issuer of an LC, who determines when and whether to draw on an LC. Teton County set the timelines for completion of the project, and when it ultimately drew on the LC, Wells Fargo fulfilled its sole obligation by paying on it. Accordingly, the district court concluded that it must dismiss Fish Creek's second claim.

We review a dismissal under Fed. R. Civ. P. 12(b)(6) de novo. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). "[I]n ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Id.* Having reviewed the record, the

applicable law, and the parties' arguments, we agree with the district court that Fish Creek's factual allegations did not plausibly suggest that Wells Fargo was liable. We therefore affirm the judgment for substantially the same reasons set forth in the district court's well-reasoned dismissal order. We add only two points. First, Fish Creek did not allege that Teton County attempted or intended to draw on the LC that terminated in July 2007, so the allegation that Wells Fargo reduced its obligation by negotiating an extension of that LC fails the plausibility test. Second, provisions of the Wyoming Uniform Commercial Code, which expressly govern the LCs, reinforce the conclusion that Wells Fargo was not obligated to Fish Creek for any failure of performance in the underlying contract for which the LCs were issued. *See* Wyo. Stat. § 34.1-5-103(d) ("Rights and obligations of an issuer to a beneficiary or a nominated person under a letter of credit are independent of the existence, performance, or nonperformance of a contract or arrangement out of which the letter of credit arises or which underlies it, including contracts or arrangements between the issuer and the applicant and between the applicant and the beneficiary."); *id.* § 34.1-5-108(f)(i)-(ii) ("An issuer [of an LC] is not responsible for (i) The performance or nonperformance of the underlying contract, arrangement or transaction; [or] (ii) An act or omission of others[.]").

   The judgment of the district court is AFFIRMED.

Entered for the Court

John C. Porfilio
Senior Circuit Judge