FILED
United States Court of Appeals
Tenth Circuit

October 30, 2012

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

UNITED STATES COURT OF APPEALS

TENKTH CIRCUIT

---

MUSCOGEE (CREEK) NATION
DIVISION OF HOUSING,

        Plaintiff–Appellant,

v.

UNITED STATES DEPARTMENT OF
HOUSING AND URBAN
DEVELOPMENT; SHAUN DONOVAN,
in his official capacity; SANDRA
HENRIQUEZ, in her official capacity; C.
WAYNE SIMS, in his official capacity,

        Defendants–Appellees.

No. 11-7040

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA
(D.C. No. 6:10-CV-00193-JHP)**

---

Michael A. Simpson (Galen L. Brittingham with him on the briefs) of Atkinson, Haskins,
Nellis, Brittingham, Gladd & Carwile, P.C., Tulsa, Oklahoma, for Appellant.

Helen L. Gilbert, Attorney, Appellate Staff Civil Division, Department of Justice, (Tony
West, Assistant Attorney General; Sheldon J. Sperling, United States Attorney; and
Michael S. Raab, Attorney, Appellate Staff Civil Division, Department of Justice, with
her on the briefs), Washington, D.C., for Appellees.

---

Before **LUCERO**, **McKAY,** and **GORSUCH**, Circuit Judges.

---

**McKAY**, Circuit Judge.

The dispute in this case involves interest earned on block grants made to Indian tribes pursuant to the Native American Housing Assistance and Self-Determination Act of 1996, 25 U.S.C. §§ 4101-4243. Specifically, Appellant Muscogee (Creek) Nation Division of Housing challenges both a regulation placing a two-year limit on the investment of grant funds and two notices issued by the U.S. Department of Housing and Urban Development stating that any interest accrued after the expiration of this two-year period must be returned to the Department. In its complaint, the Nation sought declaratory relief invalidating the regulation and notices as well as an injunction to prevent HUD from recouping interest earned on grant funds. The Nation also sought recoupment of the approximately $1.3 million of earned interest it wired to HUD after HUD sent a letter threatening an enforcement action based on the Nation's investment of grant funds for longer than two years. The district court dismissed the complaint, holding that HUD's sovereign immunity was not waived by the Administrative Procedures Act and, in the alternative, that the Nation had failed to state a claim on which relief could be granted because HUD's interpretation of the statute was permissible. The Nation challenges these conclusions on appeal.

**BACKGROUND**

Congress enacted the Native American Housing Assistance and Self-Determination Act of 1996 in order to "help[] tribes and their members to improve their housing conditions and socioeconomic status." 25 U.S.C. § 4101(5). Under NAHASDA,

tribes can receive funding through Indian housing block grants. These funds must be used "for affordable housing activities" as defined by the statute. 25 U.S.C. § 4111(g). As pertinent here, the statute permits a grant recipient to "invest grant amounts for the purposes of carrying out affordable housing activities in investment securities and other obligations as approved by the Secretary." 25 U.S.C. § 4134(b). The Secretary referred to in this statute is the Secretary of the Department of Housing and Urban Development, which is the agency responsible for administering NAHASDA. *See* 25 U.S.C. § 4103(20).

NAHASDA requires regulations implementing its provisions to be adopted pursuant to a negotiated rulemaking process. 25 U.S.C. § 4116(b)(2). Accordingly, a committee including HUD officials and tribal representatives prepared a comprehensive set of regulations, finalized in 1998. One of these regulations, 24 C.F.R. § 1000.58, sets limitations on investments of Indian housing block grant funds. After explaining the requirements for a tribe to obtain authorization to invest grant funds, defining the types of permitted investments, and setting the amount of a grant that may be invested, the regulation provides that "[i]nvestments under this section may be for a period no longer than two years," 24 C.F.R. § 1000.58(g).

In 1999, HUD issued a notice regarding administrative requirements for investing Indian housing block grant funds. Inter alia, this notice stated that "[i]nvestments may be for a period no longer than two years" and that "[t]he recipient shall maintain a schedule evidencing that the proposed investments will mature on the approximate dates the funds

will be needed and that investment maturity dates do not exceed two years." (Appellant's App. at 71-72.) From 2000 through 2004, HUD issued a notice each year that simply reissued and extended the 1999 notice. In 2007, HUD issued a new notice regarding administrative requirements for investing grant funds. This notice elaborated on the two-year limitation, stating in part:

> Investments may be for a period no longer than 2 years. The 2-year period starts on the date the recipient draws down funds for investment purposes. The 2-year requirement is the maximum period of time that any amount drawn down for investment can be invested before disbursement on an affordable housing activity.
>
> Prior to drawing down funds for investment purposes, the recipient should do an analysis of anticipated cash needs for this 2-year period, and identify those acceptable investment options or instruments with varying dates of maturity (shorter and longer term) within the projected 2-year period. . . . .
>
> When an investment instrument matures, the funds made available should be expended for an affordable housing activity. Disbursement for this purpose means actual expenditure, not just the obligation of funds. If the funds are not needed for an activity at that time, the funds could be reinvested as long as on the 2-year anniversary of the drawdown from [the tribe's Line of Control Credit System account], all funds drawn down for investment purposes have been disbursed for affordable housing activities. Any invested funds not expended on affordable housing activities by the 2-year anniversary would have to be returned to LOCCS by the recipient. Any interest accrued prior the expiration of the 2-year period is program income. Because the regulation at 24 CFR § 1000.58(g) restricts the investment period to 2 years, any interest accrued after the expiration of the 2-year period must be returned to the Department.

(Appellant's App. at 81.) The 2007 notice was reissued in 2009.

In 2006, HUD conducted an on-site performance review of the Nation's NAHASDA activities. In 2007, HUD issued a draft monitoring report regarding this

performance review. In the report, HUD identified several concerns, one of which was

the Nation's investment of funds for periods longer than two years, contrary to the

regulatory requirements. In 2009, after the Nation had sought and been denied a waiver,

HUD sent the Nation a formal letter of warning, stating:

> As a grant recipient, the Muscogee (Creek) Nation is responsible for ensuring compliance with all program and OMB Circular A-133 requirements. According to 24 CFR § 1000.530, if the Muscogee (Creek) Nation fails to address this identified program, HUD may impose remedies, as prescribed in 24 CFR § 1000.532 and/or 24 CFR § 1000.538. Section 1000.532 authorizes HUD to adjust future grant funds to zero. Upon HUD's determination that the Muscogee (Creek) Nation failed to comply substantially with any provision of the Native American Housing Assistance and Self-Determination Act, 24 CFR § 1000.538 authorizes HUD to terminate, reduce, or limit grant payments, or replace the recipient.

> If the Muscogee (Creek) Nation does not submit the $1,315,702 which is the interest earned on invested amounts after the two year expiration period through June 19, 2009 based on a review of the documentation for IHBGs 02, 03, 04, and 05 and any additional interest earned after June 16, 2009 until the funds are returned to the Department of Treasury **within 15 days** from receipt of this letter, HUD will consider taking the necessary actions, pursuant to 24 CFR § 1000.532 and 24 CFR § 1000.538 to enforce this requirement. After that time has expired, in accordance with these regulatory provisions, the Muscogee (Creek) Nation will be provided with an opportunity for an informal meeting; and if the issue remains unresolved, the Muscogee (Creek) Nation will be provided with the opportunity for a hearing.

(District Ct. Doc. No. 2-2 at 2.) A HUD official also allegedly told the Principal Chief of

the Muscogee (Creek) Nation that HUD would initiate a Department of Justice

investigation if the Nation did not comply with this demand.[1] The Nation apparently did

---

[1] As explained in the regulations cited by HUD in its warning letter, "HUD may refer the matter to the Attorney General of the United States, with a recommendation that

not proceed to the informal meeting and formal hearing steps of the enforcement process as listed in the regulations and in HUD's letter of warning; instead, it simply wired the disputed funds to HUD under protest.

The Nation then filed suit, seeking injunctive and declaratory relief regarding the validity of 24 C.F.R. § 1000.58(g) and the interest repayment requirement of the 2007 and 2009 notices. The Nation also sought return of the funds it had sent to HUD under protest. The district court dismissed the action based on the federal government's sovereign immunity, concluding in the alternative that the Nation's complaint failed to state a claim upon which relief could be granted. This appeal followed.

## DISCUSSION

We review de novo the district court's conclusion that it lacked subject matter jurisdiction based on principles of sovereign immunity. *See Fostvedt v. United States*, 978 F.2d 1201, 1202 (10th Cir. 1992). We also review de novo the district court's conclusion that the complaint failed to state a claim upon which relief could be granted. *See Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

The Nation relies on the judicial review provisions of the Administrative Procedures Act, 5 U.S.C. §§ 701-08, to establish a waiver of sovereign immunity. The

appropriate civil action be instituted," if it "has reason to believe that the recipient has failed to comply substantially with any provisions of NAHASDA." 24 C.F.R. § 1000.538(d); *see also* 25 U.S.C. § 4161(c) (providing statutory authorization for this referral and permitting the Attorney General to bring a civil action "for such relief as may be appropriate, including an action to recover the amount of the assistance furnished under this chapter that was not expended in accordance with it").

APA allows for judicial review of "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. However, the APA's waiver of sovereign immunity does not apply "to the extent that either—(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). The latter exception is a narrow one that applies when "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). HUD argued, and the district court agreed, that the Nation's complaint was barred by principles of sovereign immunity because the agency actions challenged in the complaint were "committed to agency discretion by law."

We consider this question first in the context of the Nation's challenge to 24 C.F.R. § 1000.58(g), the regulatory requirement that investments of block grant funds not exceed two years in length. The Nation contends this regulation is *ultra vires* and invalid because HUD has no authority to set timing restrictions on investments, being instead only authorized to approve certain types of investments. The Nation cites to 25 U.S.C. § 4134(b), which provides that "[a] recipient may invest grant amounts for the purposes of carrying out affordable housing activities in investment securities and other obligations as approved by the Secretary." 25 U.S.C. § 4134(b). The Nation contends this provision only authorizes the Secretary to approve specific types of investments but not to place any other limitations, including temporal restrictions, on a tribe's investment of grant funds. However, we are not persuaded that the statutory provision for "approv[al] by the

Secretary" precludes HUD from defining other investment parameters besides investment type. We thus conclude that HUD did not exceed its statutory authority when it promulgated 24 C.F.R. § 1000.58(g) through the negotiated rulemaking procedure.

Moreover, we agree with the district court that the statute commits questions regarding permissible investment parameters to the agency's discretion by law. The statute is so drawn that there is "no meaningful standard against which to judge the agency's exercise of discretion." *Heckler*, 470 U.S. at 830. The statute does not place any constraints on the Secretary's approval authority. It sets forth no factors the Secretary must consider or abide by in determining whether to approve certain investment activities, simply stating that a tribe may invest grant funds for carrying out affordable housing activities "as approved by the Secretary." Nor does the Nation point to any other statutes or regulations that limit the Secretary's discretion in setting time limitations on the investment of grant funds. The Nation argues the Secretary's discretion in setting investment restrictions is limited by NAHASDA's "guiding principle[]," 24 C.F.R. § 1000.2, of providing federal assistance "in a manner that recognizes the right of Indian self-determination and tribal self-governance by making such assistance available directly to the Indian tribes," 25 U.S.C. § 4101(7). However, such a broad statutory mandate "does not provide meaningful or substantive standard for us to review" the agency decision unless the agency action can be considered "irreconcilable" with this statutory mandate. *Sierra Club v. Yeutter*, 911 F.2d 1405, 1414 (10th Cir. 1990). While there may

be reasons why a longer investment window would be preferable,[2] we are not persuaded that a two-year investment window is "irreconcilable" with NAHASDA's intent to recognize the right of Indian self-determination and tribal self-governance. The district court therefore correctly dismissed the Nation's challenge to the regulation for lack of jurisdiction because HUD's authority to approve investment activities is committed to agency discretion as a matter of law.

We turn next to the Nation's challenge to the 2007 and 2009 notices, which stated that interest earned after the two-year investment window had expired would need to be returned to HUD. The Nation contends that, even if 24 C.F.R. § 1000.58(g) validly limits investments to a two-year period, HUD still lacks the authority to enforce this provision by demanding remittance of interest. In essence, then, this is a challenge to HUD's authority to impose such a consequence for a violation of 24 C.F.R. § 1000.58(g).

We conclude that there are meaningful standards for us to apply in evaluating whether HUD was authorized to demand remittance of interest earned in violation of 24 C.F.R. § 1000.58(g), and we therefore hold that we have subject matter jurisdiction to consider this question. However, we agree with the district court that Plaintiff's challenge to the 2007 and 2009 notices fails on the merits, since nothing about these

---

[2] Indeed, we note that HUD has proposed an amendment to extend the time restriction on investments to a five-year restriction, "given the nature of construction projects, which are often completed in subsequent fiscal years." Proposed Rules, Department of Housing and Urban Development, 76 Fed. Reg. 71474-01, 71485 (proposed Nov. 18, 2011) (to be codified at 24 C.F.R. § 1000.58). This proposed amendment does not affect our analysis of the legal issues in this case.

notices is inconsistent with the pertinent statutes and regulations.

One of NAHASDA's implementing regulations provides that tribes receiving Indian housing block grants must comply with several provisions of 24 C.F.R. part 85, "Uniform Administrative Requirements for Grants and Cooperative Agreements to State, Local, and Federally Recognized Indian Tribal Governments." One of these applicable sections, 24 C.F.R. § 85.21(i), provides in part that, "[e]xcept for interest earned on advances of funds exempt under the Intergovernmental Cooperation Act (31 U.S.C. 6501 *et seq.*) and the Indian Self-Determination Act (23 US.C. 450), grantees and subgrantees shall promptly, but at least quarterly, remit interest earned on advances to the Federal agency." This regulation stems from the "general rule that interest earned by a grantee on funds advanced by the United States belongs to the United States rather than the grantee and must be paid to the United States, except as otherwise provided by law." *In re Agency for Int'l Dev.—Interest Earned on Grant Funds by Foreign Gov't*, 64 Comp. Gen. 103, 106 (1984). Indeed, "[a]gencies do not have the authority to agree to allow the grantee to earn and retain interest on grant funds prior to their expenditure unless such authority is expressly provided." *Id.*

The Comptroller General decision of *In re Interest Earned on Unauthorized Loans of Federal Grant Funds*, 71 Comp. Gen. 387 (1992), considered how this general rule should apply where Congress had authorized grantees to retain interest earned on grant funds but, after the funds were purportedly used for grant purposes, the disbursement was later deemed not to comply with the program requirements. If the grant funds had been

used for an authorized grant purpose, they could have been retained by the grantee. However, the Comptroller General concluded "any interest earned on grant funds when those funds are not used for authorized grant purposes must be considered interest earned on grant advances, and hence, belongs to the United States." *Id.* at 388. "To hold otherwise would contradict the rationale behind the general rule that grant funds may not be used for earning income where to do so would be inconsistent with the purposes of the grant." *Id.* at 389. Concluding that the agency lacked discretion to permit the grantee to retain interest earned on loans deemed ineligible under the federal program, the Comptroller General stated the agency should "take appropriate collection action and deposit the interest collected in the Treasury as miscellaneous receipts." *Id.*

The Nation argues the Comptroller General's decision is distinguishable because the funds in that case were spent on an ineligible purpose: "In other words, the controlling factor was what the grant funds were spent on, not when they were spent." (Appellant's Opening Br. at 29.) The Nation further argues the Comptroller General's reasoning should not apply so long as funds are ultimately spent on an authorized grant purpose. Thus, the Nation argues, even if funds are invested for longer than the regulatory two-year period, interest earned on such investments need not be returned so long as it is ultimately committed to or spent on a valid NAHASDA purpose. We find these arguments unpersuasive. The controlling factor in the Comptroller General's decision was the use of grant funds in an unauthorized fashion, and that same factor is present in the instant case. Under the Indian housing block grant program, tribes are not authorized

-11-

to invest grant funds for longer than two years  After the two-year period has expired, funds still kept in investments are no longer being used for an authorized grant purpose. Whether or not the grant funds are later transferred to an authorized grant purpose, interest earned on investments that fail to comply with the regulatory requirements is not interest earned through an authorized grant purpose.  Under the Comptroller General's reasoning, interest earned by this unauthorized use of grant funds must be returned to the Treasury.  Indeed, the agency lacks the discretion to permit a tribe to retain such interest.

The Nation argues that this general principle is trumped by 25 U.S.C. § 4114(a)(1), which provides:

> [A] recipient may retain any program income that is realized from any grant amounts under this chapter if—
>> **(A)** such income was realized after the initial disbursement of the grant amounts received by the recipient; and
>> **(B)** the recipient has agreed that it will utilize the program income for affordable housing activities in accordance with the provisions of this chapter.

The Nation notes that "program income" is defined by regulation to include "payments of principal and interest earned on grant funds prior to disbursement," 24 C.F.R. § 1000.62(a), and the Nation therefore argues that HUD may not demand remittence of interest earned on grant funds.  Although we do not decide this matter today, we question whether the definition of "program income" should include income earned in violation of applicable regulatory requirements.  Moreover, even if it is so defined, we are not persuaded § 4114(a)(1) prevents HUD from demanding remittance of interest earned on noncompliant investments of grant funds.  Under subsection (a)(1)(A), the general rule

regarding retention of program income only applies when "such income was realized after the initial disbursement of the grant amounts received by the recipient." The purported program income at issue in the 2007 and 2009 notices is interest earned on grant funds prior to their disbursement to subgrantees, and it is thus not subject to the general rule permitting recipients to retain program income realized on grant amounts.

The Nation argues the "initial disbursement" referred to in subsection (a)(1)(A) must refer to the agency's disbursement of grant funds to a tribe, not the tribe's disbursement to subgrantees. However, such a definition would completely read the exception out of the statute—a tribe cannot realize program income on grant amounts it has not yet received. This provision only has meaning if it is construed to apply to program income earned by a tribe after it receives grant funds but before it disburses such funds to subgrantees. The regulatory definition of "program income" to include "interest earned on grant funds prior to disbursement," 24 C.F.R. § 1000.62(a), likewise indicates that the "disbursement" referred to in the statute must be the disbursement by a tribe to its subgrantees, not the agency's disbursement of funds to the tribe. While "interest earned on grant funds prior to disbursement" is included in the definition of program income, it is not "income realized after the initial disbursement of the grant amounts received by the recipient," and § 4114(a)(1) therefore does not preclude the recovery of interest earned in violation of the regulatory investment requirements.

Although we note the Comptroller General's decision is not binding on this court, *see Ramah Navajo Chapter v. Salazar*, 644 F.3d 1054, 1064 n.4 (10th Cir. 2011), we see

-13-

no reason why this persuasive authority should be disregarded or otherwise held not to apply to interest earned from the investment of Indian housing block grant funds in violation of 24 C.F.R. § 1000.58(g). We thus conclude that HUD's decision to demand repayment of interest earned after the expiration of the regulatory two-year period was consistent with federal law. We further conclude that the 2007 and 2009 notices did not set forth new substantive obligations but simply reiterated regulatory requirements and long-standing principles of federal appropriations law. We therefore agree with the district court that the notices were interpretive, rather than substantive, legal rules that did not violate the APA's notice and comment procedures. *See Defenders of Wildlife v. EPA*, 415 F.3d 1121, 1127-28 (10th Cir. 2005). Thus, although we conclude that the district court should not have dismissed the Nation's challenge to the 2007 and 2009 notices for lack of jurisdiction under the APA, we affirm the district court's alternative holding that this challenge fails to state a claim upon which relief may be granted.

For the foregoing reasons, we conclude that HUD was authorized to promulgate a regulation limiting the time period for investments, and we further conclude that HUD was authorized—indeed, required—to demand remittence of interest earned in violation of this regulation. We therefore conclude that the Nation is not entitled to recoupment of the interest it paid to HUD pursuant to HUD's enforcement of these principles.

## CONCLUSION

The district court's order granting Defendants' motion to dismiss is **AFFIRMED**.