**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 21, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

_____

FOREVER FENCING, INC.; RAYMOND
REYNOLDS; LISA REYNOLDS,

    Plaintiffs - Appellants,

v.

BOARD OF COUNTY
COMMISSIONERS OF
LEAVENWORTH COUNTY; DOUG
SMITH; DAVID C. VAN PARYS,

    Defendants - Appellees.

No. 23-3140
(D.C. No. 2:23-CV-02049-KHV-RES)
(D. Kan.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **MORITZ**, **ROSSMAN**, and **FEDERICO**, Circuit Judges.
_____

Plaintiffs Forever Fencing, Inc., Raymond Reynolds, and Lisa Reynolds appeal the district court's dismissal of their action filed under 42 U.S.C § 1983 for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I.    **Background**[1]

Beginning in 2005, Raymond and Lisa Reynolds operated a business named Forever Fencing out of their residence in Leavenworth County, Kansas.  Forever Fencing engages in interstate commerce.  The Leavenworth County Board of Commissioners governs Leavenworth County.  Doug Smith is a Commissioner on the Board, and David C. Van Parys is County Counselor.[2]

In 2018, Plaintiffs received notice from the County that they needed to apply for a special use permit (SUP) to continue operating the fencing business on their residential property.  After being cited for a zoning code violation, Plaintiffs applied to the County in September 2021 for a SUP to operate a contractor's yard.  After a hearing, the County Planning Commission recommended that the Board approve the SUP application.

In November 2021, Mr. Van Parys sent a memo to the Board detailing the County's experience with Forever Fencing.  The memo stated that in 2008 the County had pre-paid Forever Fencing $33,186.60 to install fencing for a road improvement project.  But the County ultimately completed the fencing work when Forever Fencing failed to do so.  After learning that Forever Fencing was insolvent,

---

[1] The background facts are derived from the allegations in Plaintiffs' complaint.

[2] *See* Kan. Stat. Ann. § 19-247 (listing the duties of a county counselor in Kansas).

2

the County did not take action to recoup money paid to the business. Mr. Van Parys advised the Board:

> It is my opinion that the information set out above is relevant to your consideration of the SUP application as the proposed SUP has certain conditions that the owners of Forever Fencing would be required to comply with. Past representations by the owners of Forever Fencing, and in particular Mr. Raymond Reynolds, have not been accurate or any indication of an intention to comply with either business obligations or county regulations.
>
> The statute of limitations on any formal legal action against Forever Fencing to collect the public monies paid to it has run. Consequently, any repayment would have to be voluntary on the part of Forever Fencing and that particular matter is not part of the SUP application. You are, however, allowed to consider past actions and statements in determining the veracity of statements that Forever Fencing will comply with the conditions of any SUP granted to it.

App. at 24-25.

The Board held a hearing on December 1, 2021, on Forever Fencing's SUP application, during which Mr. Van Parys emphasized the content of his memo to the Board. The Board then discussed requiring Forever Fencing to pay the County the money the Board believed was owed, with interest. Mr. Van Parys stated that amount would be $68,868. The Board continued the hearing on the SUP application to consider Mr. Van Parys' memo and additional documentation Plaintiffs submitted. Meanwhile, Mr. Van Parys exchanged emails with Plaintiffs' legal counsel regarding the 2008 uncompleted fencing work and invited Plaintiffs "to submit a proposal to the board regarding compensation due the county." *Id.* at 17 (internal quotation marks omitted).

3

The Board resumed its hearing on the SUP application on December 22, 2021. Mr. Raymond stated he would agree to conditions in the SUP but he would not agree to the imposition of a $68,868 "illegal fee." *Id.* The County's Planning and Zoning staff presented the Board with the Planning Commission's recommendation to approve the SUP, staff's proposed conditions, which did not include reimbursement of the money the County paid to Forever Fencing in 2008, and a proposed resolution. A commissioner moved for approval of the proposed resolution with two additional conditions related to burning on the property and a tax clearance certificate. The Board voted 3-2 to deny the SUP. It did not document a basis for the denial. Plaintiffs did not ultimately pay the County any fee or reimburse the County for fencing work not completed in 2008.

Plaintiffs filed a § 1983 complaint alleging that the Board had conditioned the issuance of a SUP on their payment of an illegal fee. They claimed they could not pay the $68,868 fee and that the Board's denial of a SUP severely damaged their fencing business. Plaintiffs alleged that Defendants violated the Commerce Clause and their rights to due process and equal protection under the Fourteenth Amendment. They further alleged that Mr. Smith and Mr. Van Parys had conspired to violate their constitutional rights. Plaintiffs sought damages and injunctive relief.

Defendants moved to dismiss Plaintiffs' complaint under Rule 12(b)(6). The district court granted the motion. It held that Plaintiffs' Commerce Clause claim failed because they did not allege a burden on interstate commerce that is clearly excessive in relation to putative local benefits. Plaintiffs' procedural due process

4

claim failed because they did not allege the deprivation of a protectible property interest. Their equal protection claim failed because they did not allege how and when Defendants treated similarly situated entities differently. And Plaintiffs' conspiracy claim failed because they did not allege an actual violation of a constitutional right under the Commerce Clause or the Fourteenth Amendment.

## II.     Discussion

"We review de novo the dismissal of a complaint for failure to state a claim." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). "[T]o withstand a motion to dismiss, a complaint must have enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted). We accept as true all well-pleaded factual allegations while disregarding legal conclusions. *See id.*[3]

### A.     Commerce Clause

#### 1.     Legal Background

The Constitution vests Congress with the power to "regulate Commerce . . . among the several States." U.S. Const. art. I, § 8, cl. 3. The Commerce Clause "also contains a further, negative command, one effectively forbidding the enforcement of certain state economic regulations even when Congress has failed to legislate on the

---

[3] Defendants argued in their motion to dismiss that the district court need not accept as true Plaintiffs' allegation that issuance of a SUP was conditioned on their payment of $68,868 to the County. The court did not address Defendants' contention because it concluded that, even accepting Plaintiffs' allegation as true, they failed to state claims for which relief could be granted. We take the same approach as the district court.

5

subject." *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 368 (2023) (brackets and internal quotation marks omitted). The Supreme Court has explained that an "antidiscrimination principle lies at the very core of . . . dormant Commerce Clause jurisprudence." *Id.* at 369 (internal quotation marks omitted). Thus, "the Commerce Clause prohibits the enforcement of state laws driven by economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *Id.* (ellipsis and internal question marks omitted); *see also Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 337-38 (2008) ("The modern law of what has come to be called the dormant Commerce Clause is driven by concern about economic protectionism that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." (internal quotation marks omitted)); *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 299 (1997) (describing "the dormant Commerce Clause's fundamental objective [as] preserving a national market for competition undisturbed by preferential advantages conferred by a State upon its residents or resident competitors").

The Supreme Court has recognized that, even where a state law is not facially discriminatory, its "practical effects may also disclose the presence of a discriminatory purpose." *Nat'l Pork Producers*, 598 U.S. at 377. In *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970), the Court said that "[w]here the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden

6

imposed on such commerce is clearly excessive in relation to the putative local benefits."  "The 'incidental burdens' of the *Pike* inquiry are the burdens on interstate commerce that exceed the burdens on intrastate commerce."  *V-1 Oil Co. v. Utah State Dep't of Pub. Safety*, 131 F.3d 1415, 1425 (10th Cir. 1997) (internal quotation marks omitted).  But the Court has recently reiterated that its Commerce Clause cases evaluated under *Pike* are not entirely distinct from its antidiscrimination cases.  *See Nat'l Pork Producers*, 598 U.S. at 377 (observing that "no clear line separates the *Pike* line of cases from [the Court's] core antidiscrimination precedents" (internal quotation marks omitted)).  The Court noted that *Pike* itself turned on the discriminatory character of the challenged statute, as revealed by its practical effects. *See id.* at 377-78.  "In other words, if some of [the Court's] cases focus on whether a state law discriminates on its face, the *Pike* line serves as an important reminder that a law's practical effects may also disclose the presence of a discriminatory purpose." *Id.* at 377; *see id.* at 378 (citing "cases in the *Pike* line" in which "the presence or absence of discrimination in practice proved decisive"); *see also Tracy*, 519 U.S. at 298 n.12 (identifying congruity between the Court's core dormant Commerce Clause precedents and the *Pike* line of cases).

Even so, the Supreme Court "has left the courtroom door open to challenges premised on even nondiscriminatory burdens," and "a small number of [the Court's] cases have invalidated state laws that appear to have been genuinely nondiscriminatory."  *Nat'l Pork Producers*, 598 U.S. at 379 (ellipsis and internal quotation marks omitted); *see id*. at 379 n.2 (noting, for example, Commerce Clause

preemption of "an entire field from state regulation . . . only when a lack of national uniformity would impede *the flow* of interstate goods" (internal quotation marks omitted)).

This court has distinguished between Commerce Clause claims challenging regulatory fees and claims challenging taxes, giving greater scrutiny to taxes than to fees. *See V-1 Oil Co.*, 131 F.3d at 1422-23 (10th Cir. 1997) (noting "the power to tax is a dominant power over commerce," *id.* at 1423 (brackets and internal quotation marks omitted)). We apply state law in determining whether a monetary assessment is a tax or a fee. *See id.* at 1423. If the claim involves a fee, we apply the *Pike* analysis. *Id.* at 1423-24.

### 2.    District Court's Decision

The district court first held that the alleged $68,868 repayment requirement was, under Kansas law, a fee rather than a tax. The court then applied the *Pike* balancing test to the allegations in Plaintiffs' complaint. It noted Plaintiffs failed to respond to Defendants' argument that the complaint did not allege any burden on interstate commerce. Citing Plaintiffs' allegation that the fee had only been applied to them, the court reasoned that, "'although evidence regarding a particular company may be suggestive, the benefit-to-burden calculation is [not] based on . . . the benefits and burdens with respect to a particular company or transaction.'" App. at 141-42 (brackets omitted) (quoting *Quik Payday, Inc. v. Stork*, 549 F.3d 1302, 1309 (10th Cir. 2008)); *see also Exxon Corp. v. Governor of Md.*, 437 U.S. 117, 127-28 (1978) (noting the Commerce Clause "protects the interstate market, not particular interstate

8

firms, from prohibitive or burdensome regulations"). The district court concluded Plaintiffs' claim under the dormant Commerce Clause failed because they did not allege "a burden on interstate commerce which 'is clearly excessive in relation to the putative local benefits.'" App. at 142 (quoting *Pike*, 397 U.S. at 142).

### 3.    Plaintiffs' Contentions

Plaintiffs do not challenge the district court's holding that the alleged $68,868 repayment requirement was a fee rather than a tax. *See, e.g.*, Aplt. Opening Br. at 1 (referencing "the 'Fee'" in setting forth the issues on appeal). But Plaintiffs nonetheless contend the district court erred by applying the *Pike* analysis. They maintain that the question is instead whether the fee "(1) is based on some fair approximation of use of the facilities, (2) is not excessive in relation to the benefits conferred, and (3) does not discriminate against interstate commerce." *Id.* at 16. According to Plaintiffs, "a fee does not have to discriminate against interstate commerce to violate [this] test[]." *Id.* Plaintiffs argue the $68,868 fee fails this test because it "is not fair or practical, it is excessive, and it bears no relation to the cost of regulating the [SUP]." *Id.* at 26. For this proposition, Plaintiffs rely on *Evansville-Vanderburgh Airport Authority District v. Delta Airlines, Inc.*, 405 U.S. 707, 715-16 (1972),[4] and *Northwest Airlines, Inc. v. County of Kent*, 510 U.S. 355, 369 (1994), both of which addressed per-passenger fees charged by airport authorities.

---

[4] The Supreme Court's decision in *Evansville* was superseded by statute, as stated in *Northwest Airlines, Inc. v. County of Kent*, 510 U.S. 355, 363 (1994).

In response, Defendants acknowledge that the Supreme Court applies various tests to Commerce Clause challenges. But they assert that, "[a]side from the *Evansville* case itself, the test articulated therein has never actually been used again by a majority of the Court to decide a Commerce Clause controversy." Aplee. Br. at 18 (brackets and internal quotation marks omitted). And Defendants state that the Supreme Court has cited *Evansville* only once in the last twenty-five years, in a case where that decision was irrelevant to the issue raised. *See United States v. U.S. Shoe Corp.*, 523 U.S. 360, 367-68 (1998). Defendants' description of the Supreme Court's reliance on *Evansville* is mostly correct.[5] But we need not address their suggestion that the *Evansville* test is no longer viable in any context because we are not persuaded by Plaintiffs' various contentions that it applies in this case.

Plaintiffs argue that, because they alleged violations of their rights under both the Commerce Clause and the Due Process Clause, the district court should have applied a "parallel Due Process analysis," which they claim is governed by *Evansville* and *Northwest Airlines*. Aplt. Opening Br. at 27; *see also id.* at 15-16 (arguing this "parallel analysis" also applies to Plaintiffs' due process claim). But Plaintiffs fail to identify such a parallel analysis in either decision. *Evansville* addressed challenges to per-passenger fees under the Commerce Clause, the Equal

---

[5] We note that the Supreme Court applied the *Evansville* test to a Commerce Clause challenge in *Northwest Airlines*, *see* 510 U.S. at 373-74, in addition to taking the parties' suggestion to use that test in deciding how to measure "reasonableness of fees" under the Anti-Head Tax Act, *id.* at 367-68, which Congress passed in reaction to the Court's decision in *Evansville*, *see id.* at 363.

10

Protection Clause, and the constitutional right to travel. *See* 405 U.S. at 709, 711. The Court referenced due process only in a footnote describing limits on "[t]he State's jurisdiction to tax," within a discussion of the Court's holding in a previous case. *Id.* at 711-12 & n.5. *Northwest Airlines* did not mention due process. Plaintiffs have not demonstrated that the district court erred by not applying a "parallel Due Process analysis."[6]

Plaintiffs also quote a single sentence from *South Dakota v. Wayfair*, 585 U.S. 162, 177 (2018), which states: "When considering whether a State may levy a tax, Due Process and Commerce Clause standards may not be identical or coterminous, but there are significant parallels." Here, however, the question is not whether a state may levy a tax. And the context of the Court's statement regarding "significant parallels" is not relevant to Plaintiffs' claims.[7]

Plaintiffs next contend that, while the *Pike* analysis applies to Commerce Clause challenges to state laws or regulations, the *Evansville* test applies to fees. *See* Aplt. Opening Br. at 26. But the district court's reliance on *Pike* is consistent with

---

[6] Plaintiffs also cite Kansas state-court decisions that do not bind this court and are not otherwise persuasive.

[7] In *Wayfair*, the Supreme Court considered whether a state could require an out-of-state seller to collect and remit a sales tax. 585 U.S. at 167-68. The Court noted that the nexus requirement under the Commerce Clause is closely related to the due process requirement of a minimum connection between the state and the basis for taxation. *See id.* at 177. The Court ultimately held that "[p]hysical presence is not necessary to create a substantial nexus" with a state for purposes of a due process or Commerce Clause analysis of a seller's liability to remit sales taxes. *Id.* at 178.

our decision in *V-1 Oil*, in which we applied *Pike* in considering a Commerce Clause challenge to licensing fees charged to liquefied petroleum gas facilities, *see* 131 F.3d at 1423-24. Despite the district court's citation to *V-1 Oil*, *see* App. at 140, Plaintiffs do not acknowledge that case or attempt to distinguish it in their opening brief.

Plaintiffs further argue that *Pike* and *V-1 Oil* apply only where a plaintiff alleges a *discriminatory effect* on interstate commerce, whereas their Commerce Clause challenge focuses on the *excessiveness* of the alleged fee rather than any discriminatory purpose or effect. *See* Aplt. Opening Br. at 26-27, 29; Aplt. Reply Br. at 5-9. Plaintiffs cite no case expressly stating this proposition. We recognize that a "small number" of Supreme Court "cases have invalidated state laws that appear to have been genuinely nondiscriminatory," and the Court has not foreclosed future Commerce Clause "challenges premised on even nondiscriminatory burdens." *Nat'l Pork Producers*, 598 U.S. at 379 (ellipsis and internal quotation marks omitted). But such a challenge "falls well outside *Pike*'s heartland," and "[t]hat is not an auspicious start." *Id.* at 380. Even accepting Plaintiffs' contention that *Evansville* presented a challenge to a nondiscriminatory fee, we are not persuaded that decision addressed a claim sufficiently similar to Plaintiffs' such that they can assert a Commerce Clause challenge based upon an allegedly excessive fee that does not discriminate against interstate commerce in either purpose or effect.

We must tread carefully in applying the dormant Commerce Clause. *See id.* at 390 (stating that "extreme caution is warranted before a court deploys this implied authority" (internal quotation marks omitted)). And the Supreme Court has

12

emphasized that its "opinions dispose of discrete cases and controversies and they must be read with a careful eye to context." *Id.* at 373-74; *see also Wayfair*, 585 U.S. at 180 (noting the Court applies a "sensitive, case-by-case analysis" in "Commerce Clause jurisprudence" (internal quotation marks omitted)).

Here, Plaintiffs read too much into *Evansville*. That case considered the constitutionality of per-passenger fees imposed by airport authorities on certain commercial aircraft operating from publicly owned airports. *See* 405 U.S. at 709-10. The Court considered not only whether such fees ran afoul of the Commerce Clause, but also whether they infringed upon the constitutional right to travel. *See id.* at 711-12, 714. It analogized to cases "concerning highway tolls." *Id.* at 715. And in applying the test that Plaintiffs assert is applicable here, the Court concluded that the fees in question did not "discriminate[] against interstate commerce *and travel*," *Evansville*, 405 U.S. at 717 (emphasis added).

In stark contrast, Plaintiffs assert that, in one instance, Defendants conditioned the issuance of a SUP on the payment of an allegedly excessive fee by a single business engaged in interstate commerce. And Plaintiffs eschew any claim that the fee discriminates against interstate commerce, either facially or in effect. Nothing in *Evansville* holds or suggests that the circumstances alleged in this case place it among the "small number" of successful Commerce Clause challenges to "nondiscriminatory burdens," *Nat'l Pork Producers*, 598 U.S. at 379 (internal quotation marks omitted). In *National Pork Producers*, the Supreme Court rejected a dormant Commerce Clause challenge to a nondiscriminatory state law prohibiting the

13

in-state sale of certain pork products, despite a claim of substantial new costs on out-of-state producers. *See id.* at 363-64, 367, 371; *see also id.* at 379 n.2 (stating, "We do not face a law that impedes the flow of commerce. Pigs are not trucks or trains."). Consequently, Plaintiffs have not demonstrated that the district court erred by applying *Pike* in assessing the sufficiency of their dormant Commerce Clause claim.

In their reply brief, Plaintiffs argue for the first time that, even under *Pike*, their claim is not subject to dismissal for failure to state a claim. This argument comes too late. *See Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000) ("This court does not ordinarily review issues raised for the first time in a reply brief."). Even were we to consider this contention, Plaintiffs concede that their claim is not based upon an allegation of discriminatory purpose or effect, so it "falls well outside *Pike*'s heartland," *Nat'l Pork Producers*, 598 U.S. at 380.

Plaintiffs fail to demonstrate that the district court erred in dismissing their dormant Commerce Clause claim for failure to state a claim.

### B.    Due Process

#### 1.    Legal Background

The Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "A procedural due process claim consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process." *Reed v. Goertz*, 598 U.S. 230, 236 (2023). Thus, to prevail, a plaintiff

14

must demonstrate the existence and deprivation of a constitutionally cognizable interest. *See Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007). "While the underlying interest is generally created by state law, federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause." *Id.* at 1079 (internal quotation marks omitted).

### 2.    District Court's Decision

The district court first addressed Plaintiffs' substantive due process claim, as asserted in their complaint and in response to Defendants' motion to dismiss. It concluded that claim consisted of "[n]aked assertions of legal claims, without factual elaboration." App. at 145 n.4. The court therefore declined to address substantive due process any further.

Turning to their procedural due process claim, the district court first stated that "Plaintiffs do not argue that defendants deprived them of a constitutionally cognizable liberty interest." *Id.* at 145 n.5. It then addressed Plaintiffs' contention that, by imposing the $68,868 fee, the County had deprived them of "property, i.e. money." *Id.* at 111. Because Plaintiffs expressly stated they did not pay that fee, the court held they had not alleged a deprivation of a protectible property interest. The district court relied on *Teigen*, in which we affirmed dismissal of a due process claim, in part, where the plaintiffs had alleged a protectible property interest but failed to allege a deprivation of that interest. *See* 511 F.3d at 1075, 1079.

### 3.    Plaintiffs' Contentions

On appeal, Plaintiffs do not acknowledge or challenge the district court's holding that they failed to adequately raise a substantive due process claim in the district court. Therefore, like the district court, we consider only Plaintiffs' contentions regarding a violation of their right to procedural due process.

Plaintiffs first argue the district court erred by failing to apply a "parallel analysis" to their due process and Commerce Clause claims. Under such an analysis, they assert that the $68,868 fee violated their right to due process because it is excessive. We have already addressed and rejected this "parallel analysis" contention as unsupported in discussing their Commerce Clause claim. As applied to their due process claim, Plaintiffs' argument lacks merit for the same reasons. To the extent Plaintiffs suggest that such an analysis would not require them to plead a deprivation of a protectible interest, they cite nothing to support such a proposition. We therefore also reject this contention.

Plaintiffs next argue that the district court erred by focusing solely on the protectible interest they asserted in response to Defendants' motion to dismiss: a property interest in the form of money, specifically the $68,868 fee.[8] Plaintiffs maintain the court should instead have considered (1) the deprivation of their liberty

---

[8] Plaintiffs do not challenge the district court's holding that they could not base their due process claim on a property interest in money they never paid. They appear to abandon their district-court argument by describing it as "a 'straw man' [the court] could easily knock over to dismiss [their] Due Process claims." Aplt. Opening Br. at 19.

16

interest in using their property to operate their fencing business for over a decade before the County required them to apply for a SUP and conditioned its issuance on payment of the fee, and (2) the deprivation of their property interest in continuing to operate their fencing business under Kansas's nonconforming-use doctrine.

Defendants respond that Plaintiffs failed to preserve either argument in the district court.  "An issue is preserved for appeal if a party alerts the district court to the issue and seeks a ruling." *Somerlott v. Cherokee Nation Distribs., Inc.* 686 F.3d 1144, 1150 (10th Cir. 2012) (internal quotation marks omitted).  The district court concluded Plaintiffs did not argue that Defendants deprived them of a liberty interest. Plaintiffs do not acknowledge or challenge that ruling in their opening brief.  In their reply brief, Plaintiffs respond to Defendants' lack-of-preservation contention by arguing (1) this court can affirm on any ground adequately supported by the record, and (2) they sufficiently pleaded their long-standing business in their complaint. Neither assertion is persuasive.

"It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below." *Richison v. Ernest Grp. Inc.*, 634 F.3d 1123, 1127 (10th Cir. 2011) (internal quotation marks omitted).  This rule applies to legal theories newly raised on appeal. *See id.* at 1127-28.  Thus, the question is whether Plaintiffs raised a liberty-interest theory or a nonconforming-use theory in the district court.  They did not.  And while we will sometimes *affirm* based on an argument not raised in the district court, "a newly raised legal theory . . . may form a basis for *reversal* only if the appellant can satisfy the elements of the plain error

17

standard of review." *Id.* at 1130. Plaintiffs do not argue for plain error review and their failure to do so "surely marks the end of the road for an argument for reversal not first presented to the district court." *Id.* at 1131.[9]

Finally, Plaintiffs contend they were deprived of a fair and impartial tribunal due to Mr. Van Parys' alleged conflict of interest, in violation of their right to due process. But under the Fourteenth Amendment, "[p]rocess is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence*, 927 F.2d 1111, 1118 (10th Cir. 1991) (internal quotation marks omitted). Thus, Plaintiffs cannot pursue a due process claim based solely on an allegation of inadequate process. *See Teigen*, 511 F.3d at 1081 (rejecting due process claim based on "no more than a claim of entitlement to a fair process").

Plaintiffs fail to demonstrate that the district court erred in dismissing their due process claim for failure to state a claim.

---

[9] Even if Plaintiffs had raised these legal theories in the district court or argued plain error on appeal, we would not apply the pleading standard urged in their reply brief. *See* Aplt. Reply Br. at 11 (arguing a complaint should not be dismissed unless "it appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief" (internal quotation marks omitted)). The Supreme Court overruled the "no set of facts" pleading standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562-63 (2007).

### C.    Equal Protection

#### 1.    Legal Background

The Fourteenth Amendment prohibits a state from denying "any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  The Equal Protection Clause "embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly."  *Teigen*, 511 F.3d at 1083 (internal quotation marks omitted).  A plaintiff who is not a member of a particular class may assert a "class-of-one" equal-protection claim.  *Kan. Penn Gaming*, 656 F.3d at 1216. In doing so, a plaintiff must establish two elements:  (1) "that others, similarly situated in every material respect were treated differently," and (2) "this difference in treatment was without rational basis, that is, the government action was irrational and abusive, and wholly unrelated to any legitimate state activity."  *Id.* (citation and internal quotation marks omitted).  We have said that "[t]he paradigmatic class of one case, sensibly conceived, is one in which a public official, with no conceivable basis for his action other than spite or some other improper motive (improper because unrelated to his public duties), comes down hard on a hapless private citizen."  *Id.* (brackets and internal quotation marks omitted).

We approach a class-of-one equal-protection claim "with caution," especially regarding "challenges to low-level government decision-making, which often involves a great deal of discretion."  *Id.*  Thus, demonstrating the two required elements is a "substantial burden" on plaintiffs, and the first element is "especially important in class-of-one cases."  *Id.* at 1217 (internal quotation marks omitted).

"[T]he requirement that comparators be similarly situated in *all material respects* is inevitably more demanding where a difference in treatment could legitimately be based on a number of different factors." *Id.* at 1218 (internal quotation marks omitted). The second element "is objective—if there is a reasonable justification for the challenged action, we do not inquire into the government actor's actual motivations." *Id.* at 1216.

### 2.    District Court's Decision

The district court held that Plaintiffs' equal protection claim failed on the first element because their "complaint is devoid of specific factual allegations of how and when defendants gave differential treatment to similarly situated entities." App. at 144. The court considered and rejected Plaintiffs' contention they were similarly situated to all other SUP applicants who sought land use exceptions through the SUP process. It concluded, "This argument misses the mark: the question is whether defendants treated plaintiffs differently from other applicants who had breached contractual obligations to the County and thus inflicted financial losses on the County." *Id.*

### 3.    Plaintiffs' Contentions

Plaintiffs argue the district court erred by applying a heightened pleading standard to their allegation that Defendants treated similarly situated entities differently. They contend the district court further erred by narrowing the class of similarly situated entities to SUP applicants who owe the County money, and then compounded that error by assuming Plaintiffs breached a contract with the County.

20

We find no merit in these contentions and conclude the district court did not err in holding that Plaintiffs failed to allege the County treated differently any entity similarly situated to Plaintiffs *in all material respects*.

Plaintiffs assert the district court applied a pleading standard higher than plausibility. We are not persuaded. Dismissal of an equal protection claim is appropriate when a plaintiff "fail[s] to set out specific examples of similarly situated individuals and differing treatment." *Kan. Penn Gaming*, 656 F.3d at 1219. Thus, a "threadbare allegation of different treatment to similarly situated individuals" will not satisfy the plausibility standard. *Id.* at 1218. In *Kansas Penn Gaming*, we applied the plausibility standard to affirm dismissal of an equal protection claim challenging enforcement of a nuisance law where the plaintiff's allegations were conclusory and omitted "specific facts plausibly suggesting the conditions on the properties and the properties themselves are similar in all material respects." *Id.* at 1220; *see id.* at 1212-13. Here, the district court properly applied the plausibility standard in disregarding Plaintiffs' threadbare allegation that they were similarly situated to all other SUP applicants.

Plaintiffs also appear to suggest that the SUP application process does not involve discretion because the County applies the factors in *Golden v. City of Overland Park*, 584 P.2d 130, 136 (Kan. 1978). But "the *Golden* factors are clearly meant only as suggestions." *Jacobs, Visconti & Jacobs*, 927 F.2d at 1116. Thus, the requirement to identify relevant comparators is "more demanding" in this case,

21

"where a difference in treatment could legitimately be based on a number of different factors." *Kan. Penn Gaming*, 656 F.3d at 1218.

Plaintiffs challenge the district court's reliance on their debt to the County as a relevant distinguishing factor between Plaintiffs and comparators. They first assert that Defendants failed to explain the decision to condition the SUP on Plaintiffs' payment of the fee and never offered an alleged breach or debt as a rational basis for doing so. But the crux of Plaintiffs' equal protection claim is that Defendants treated them differently on this very basis. And they "must show that no rational person could regard [their] circumstances . . . to differ from those of a comparator to a degree that would justify the differential treatment." *Id.* (brackets and internal quotation marks omitted). A "court must independently consider whether there is any conceivable rational basis for the classification, regardless of whether the reason ultimately relied on is provided by the parties or the court." *Teigen*, 511 F.3d at 1084.[10]

Finally, Plaintiffs contend their infliction of financial loss on the County is not a material difference between them and other SUP applicants because their breach of contract and the damages amount are disputed. But the district court stated,

---

[10] Elsewhere in their opening brief, Plaintiffs characterize the alleged $68,868 fee as "illegal," *e.g.*, Aplt. Opening Br. at 15, 21, 26, but they never explain the asserted illegality. As regards their equal protection claim, a state actor's decision may be considered rational even though it is at odds with state or other law. *See Teigen*, 511 F.3d at 1085 ("It must be emphasized . . . that the question of whether a policy is lawful is separate from the question of whether the policy is constitutional.").

"Plaintiffs do not allege that the County's position with regard to the fencing contract was unfounded.  The Court therefore assumes that Forever Fencing did breach that contract and caused the County to sustain losses of $68,868.00."  App. at 144 n.3. Although Plaintiffs argue this assumption is not supported by "the evidence in the record," Aplt. Opening Br. at 34, they fail to point to any allegation in the complaint contrary to the district court's conclusion, *see id.* at 34-35 (citing attachments to complaint including Mr. Van Parys' memo to the Board and internal County emails, *see* App. at 24-27).

Plaintiffs fail to demonstrate that the district court erred in dismissing their equal protection claim for failure to state a claim.

### D.    Conspiracy Claim

"[A] deprivation of a constitutional right is essential to proceed under a § 1983 conspiracy claim."  *Snell v. Tunnell*, 920 F.2d 673, 701-02 (10th Cir. 1990).  The district court dismissed Plaintiffs' conspiracy claim because they failed to allege an actual deprivation of a constitutional right under the Commerce Clause or the Fourteenth Amendment.  Because of Plaintiffs' failure to show error in the dismissal of their constitutional claims, they demonstrate no error in the dismissal of their § 1983 conspiracy claim.

**III.    Conclusion**

We affirm the district court's judgment.

Entered for the Court


Veronica S. Rossman
Circuit Judge